No. 114,213

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLINT E. WOODS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The doctrine of res judicata applies to a K.S.A. 60-1507 movant who attempts to raise issues which have previously been resolved by a final appellate court order in his or her criminal proceeding.

2.

A defendant cannot revive an abandoned point in a subsequent proceeding.

3.

A voluntary plea of guilty is a confession of guilt of the crime and every material fact alleged therein.

4.

Where judgment and sentence have been entered upon a plea of guilty, there can be no review of the sufficiency of the evidence in a K.S.A. 60-1507 proceeding.

5.

A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked on the ground that, as a factual matter, the accused was not guilty of the offense charged.

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed September 2, 2016. Affirmed.

*Richard Ney*, of Ney & Adams, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and WALKER, S.J.

ARNOLD-BURGER, J.; On October 10, 2003, Clint E. Woods, stood before a judge and stated, "I shot and killed [Davonta] Mitchell." This court found that his guilty plea was freely and voluntarily entered and that he was represented by competent and effective counsel at the time of his plea. See *State v. Woods*, No. 93,417, 2006 WL 851245 (Kan. App.) (unpublished opinion), *rev. denied* 282 Kan. 796 (2006) (*Woods I*); *Woods v. State*, No. 105,948, 2012 WL 6734507 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1257 (2013) (*Woods II*). In this, his untimely and successive K.S.A. 60-1507 motion, he asks us to order the district court to conduct an evidentiary hearing to examine his claim of actual innocence. Because we find, consistent with long-standing Kansas Supreme Court, Tenth Circuit Court of Appeals, and United States Supreme Court precedent, that a conviction resulting from a valid plea of guilty is not subject to collateral attack on the ground the accused is factually innocent of the offense charged, we affirm the district court's summary denial of his second K.S.A. 60-1507 motion.

FACTUAL AND PROCEDURAL HISTORY

In September 2002, Davonta Mitchell and Antonio Allen were fatally shot at a Wichita park, and Kilmonte Loudermilk was wounded. Based on this incident, the State charged Woods with two counts of first-degree murder and a single count of aggravated battery. But before the scheduled jury trial, Woods agreed to plead guilty to a single count of second-degree murder.

At the plea hearing, he told the judge he wished to change his plea to guilty and that he and his attorneys had gone over his acknowledgment of rights. He confirmed that he understood all the rights he was waiving, including those to a jury trial and to call and confront witnesses. He also stated that he understood the charges, the possible sentences, and the State's recommendation for of 258 months' imprisonment. Woods assured the district court that no one had coerced or threatened him into pleading guilty and that he had no questions. After all this, the district court judge asked Woods for a factual basis for his guilty plea, and Woods said, "I shot and killed [Davonta] Mitchell." He confirmed the date and location of the crime, and the district court accepted the plea and found him guilty

*Woods moves to withdraw his plea.*

Two months later and before sentencing, Woods moved pro se to withdraw his plea. In two separate motions, he claimed that his counsel intimidated him into pleading guilty and failed to advise him of the plea's consequences. A new attorney, Michael Brown, was appointed to represent Woods. Brown filed a third amended motion to withdraw his plea, adding a claim of actual innocence.

At the motion hearing, Woods raised two significant allegations. First, he claimed that his attorney misrepresented the length of the sentence associated with his plea. He

3

believed he would only get 60 months in prison and claimed that had he known that was not the case, he would not have entered a plea. Second, Woods claimed that on the day he entered his plea, a potential State witness named Kaylen Irby presented himself at Woods' lawyer's office and advised someone there that he (Irby) wanted to recant a prior statement because he had falsely implicated Woods in the shooting. Woods claims that had he known about Irby's recantation, he would not have entered a plea.

Woods, and Woods' two trial lawyers, Kurt Kerns and Steven Mank, testified at an evidentiary hearing. But the district court denied the motion, finding that Woods had competent counsel, was not misled, taken advantage of, or coerced, and freely and voluntarily entered his plea. The district court ultimately sentenced Woods to 258 months' imprisonment. Woods appealed, and this court upheld the denial of his motion to withdraw his plea. *Woods I*, 2006 WL 851245, at *2. Specifically, the court found that Woods presented no evidence supporting the allegation that Irby tried to contact Woods' attorney and change his story. 2006 WL 851245, at *2.

*Woods files his first K.S.A. 60-1507 motion.*

In 2007, after this court's decision in *Woods I*, Woods filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel. Woods claimed that his trial attorneys failed to adequately investigate potential witnesses, specifically his girlfriend—Rawshanda Solomon—and Irby, prior to trial. Again, he claimed without support that Irby approached Woods' attorneys to recant his statement.

At an evidentiary hearing, Woods claimed that his attorneys led him to believe that the fact that Irby's statement was damaging was the key reason he should plead guilty. He stated that had he known Irby had recanted his initial story, he would have never entered the plea.

4

After hearing all evidence, including the testimony of his attorneys, and reviewing the case file, the district court found that counsel was not ineffective. Instead, the district court determined that Irby's changed statement "would not produce a great amount of evidence" and did not constitute an alibi, as he claimed it would in his motion. As such, the district court denied the motion.

Again, Woods appealed. In considering the case, this court first determined that because Woods failed to pursue his allegations about Solomon's changing testimony at the evidentiary hearing or on appeal, he waived and abandoned that particular issue. *Woods II*, 2012 WL 6734507, at *5. Next, the court determined that Woods' allegations concerning Irby were barred by the doctrine of res judicata. 2012 WL 6734507, at *6-7. But even had that issue not been barred, this court concluded that "Woods failed to overcome the strong presumption that his attorneys sufficiently investigated Irby's proposed trial testimony." 2012 WL 6734507, at *8. After a full hearing, "although Woods posited a different version of the events leading up to his plea, the district court found the testimony of [Woods' attorneys] to be more credible and compelling." 2012 WL 6734507, at *8. Accordingly, this court affirmed the district court's decision denying Woods K.S.A. 60-1507 motion.

*Woods files his second K.S.A. 60-1507 motion.*

More recently, in May 2014, Woods filed a second K.S.A. 60-1507 motion. There, he again argued that his trial counsel failed to provide him adequate representation, claiming:

- Originally, Solomon told police that Woods spent the night of the crime at her home, but she later retracted that statement and implicated Woods in the shooting. Now, she admits that her new boyfriend pressured her into that retraction and that Woods indeed spent the night with her.

- Kerns painted Irby as the State's most important witness, but both Kerns and Mank failed to tell Woods that Irby had not been endorsed and in fact had changed his original story. Irby attempted to meet with Kerns at his law office; instead, he spoke briefly to Mank, who never followed up with him.
- Mank misrepresented the length of the sentence associated with the plea.
- Brown failed to call Manuel Roach at the hearing on the motion to withdraw Woods' plea even though Roach had sent Brown a letter admitting that he had lied to the police about Woods' involvement in the shooting.

Woods submitted several other signed, written statements from supporting witnesses. Because he used a private investigator to collect these statements, Woods categorized the information as newly discovered evidence. Overall, Woods reasserted his trial counsels' ineffectiveness, the ineffectiveness of Brown, and continued to assert his innocence. Notably, he did *not* argue that his first K.S.A. 60-1507 counsel was ineffective, even though virtually all of this information, including the claim regarding Brown's ineffectiveness, was available at the time his first K.S.A. 60-1507 motion was filed. And to overcome the procedural hurdles associated with a second and untimely motion, he argued that manifest injustice—notably a colorable claim of actual innocence—required the district court to consider his arguments on their merits.

In its response, the State argued that the motion simply constituted Woods' latest attempt to relitigate the issues surrounding the motion to withdraw his plea. The State reasoned that Woods relied on the same arguments as in previous proceedings, all of which had been resolved against him. The State also objected to categorizing any of the new factual allegations as newly discovered and contended that Woods failed to

6

demonstrate either manifest injustice or exceptional circumstances to justify an untimely and successive claim.

The district court summarily denied the motion, adopting the State's response as the order of the court. Specifically, the district court found "no showing of manifest injustice" and noted that "the claims are barred by res judicata as these matters have been addressed in large part in prior motions." Woods timely appealed.

ANALYSIS

*Because the district court summarily denied Woods motion, our standard of review is unlimited.*

When faced with a K.S.A. 60-1507 motion, the district court can either: (1) "'determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily'"; (2) determine from the same sources that a "'potentially substantial issue exists'" and hold a preliminary hearing; or (3) determine that a substantial issue exists and requires a full evidentiary hearing. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). The standard of review depends on which option the district court employs. 300 Kan. at 881. When, as here, the district court summarily denies the motion, the appellate court exercises unlimited review and must determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. 300 Kan. at 881.

Woods argues that the district court erred when summarily dismissing his motion, as his allegations of actual innocence and attorney ineffectiveness justified, at the very least, an evidentiary hearing. The State counters that the instant claims are largely barred by res judicata. Additionally, the State contends that Woods failed to demonstrate either

7

manifest injustice or exceptional circumstances to justify the filing of a late and successive claim.

*We first examine general principles regarding K.S.A. 60-1507 motions.*

Several special rules control the substance, form, and procedure of a K.S.A. 60-1507 motion.

First, a defendant has 1 year from when his or her conviction becomes final to file a K.S.A. 60-1507 motion. K.S.A. 60-1507(f)(1). The district court may extend this time limit to prevent manifest injustice. K.S.A. 60-1507(f)(2). Manifest injustice must be determined from the totality of the circumstances. In determining whether manifest injustice exists, the court should consider this nonexhaustive list of factors: (1) whether the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the time limitation; (2) whether the merits of the movant's claims raise substantial issues of law or fact deserving the district court's consideration; and (3) whether the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence. See *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014).

Second, the district court is not required to entertain a second or successive motion from the same individual. K.S.A. 60-1507(c); *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013). In fact, a K.S.A. 60-1507 movant "is presumed to have listed all grounds for relief," meaning that he or she must show circumstances justifying the failure to include a newly raised issue in a previous motion in order to avoid dismissal. 296 Kan. 898, Syl. ¶ 2; see Supreme Court Rule 183(d) (2015 Kan. Ct. R. Annot. 271).

Likewise, "[a] proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second

appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal." Supreme Court Rule 183(c)(3) (2015 Kan. Ct. R. Annot. 272). "Exceptional circumstances" have been defined to include "'"unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding."'" *State v. Mitchell*, 297 Kan. 118, 123, 298 P.3d 349 (2013). Exceptional circumstances can include ineffective assistance of counsel. *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

There is no dispute that Woods' current K.S.A. 60-1507 motion is both untimely and successive.

We would typically next consider the applicability of the exceptions to both of these procedural bars. But before we do, we must first examine three overarching issues that are ultimately determinative of this appeal: res judicata, waiver, and the impact of a guilty plea on a K.S.A. 60-1507 motion.

*Several of Woods claims are barred by res judicata and waiver.*

Essentially, the doctrine of res judicata prevents an individual from splitting a single issue into multiple lawsuits. See *Shelton v. DeWitte*, 271 Kan. 831, 836-37, 26 P.3d 650 (2001). In Kansas, this doctrine applies to a K.S.A. 60-1507 movant who attempts to raise issues "which have previously been resolved by a final appellate court order in his or her criminal proceeding." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 14, 136 P.3d 390 (2006). Moreover, when a criminal defendant files a direct appeal from his or her conviction and sentence, "the judgment of the reviewing court is res judicata as to all issues actually raised; those issues that could have been presented, but were not presented, are deemed waived." 281 Kan. 1058, Syl. ¶ 12. In other words, and absent

9

certain exceptions, a defendant's failure to raise an issue on direct appeal "prevents the defendant from raising the claim in a second appeal or in a collateral proceeding." 281 Kan. 1058, Syl. ¶ 12.

A review of the complete record in this case, including the direct criminal appeal and the first K.S.A. 60-1507 proceeding, reveals that Woods is now attempting to relitigate two major issues: (1) his attorney's failure to fully investigate witnesses and their changing stories, and (2) his attorney's representation about the length of his sentence. Both the district court and this court already ruled on these issues, and although Woods attempts to paint his new arguments in a slightly different light, the fact remains that they are unchanged from their original form. As such, our Kansas caselaw prevents him from raising them for what is essentially a third time.

Woods attempts to circumvent the application of this doctrine by arguing that his claim of actual innocence (which will be discussed below) trumps any res judicata concerns. In support of this position, he cites to a United States Supreme Court case concerning actual innocence claims raised during habeas corpus proceedings. See *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). But *Schlup* simply establishes the proper standard by which to measure claims of actual innocence, not the effect of such claims on res judicata. In fact, the Court only really discusses res judicata when outlining the federal standards for considering a second or subsequent habeas corpus petition. See 513 U.S. at 317-20. And while that section notes that the Court relies on the "equitable nature of habeas corpus to preclude application of strict rules of res judicata," our Kansas caselaw clearly applies the doctrine to K.S.A. 60-1507 motions. Compare *Schlup*, 513 U.S. at 319, with *Drach*, 281 Kan. 1058, Syl. ¶ 14. For that reason, any allegations about failure to investigate witnesses or the recommended sentence length are barred by the doctrine res judicata.

10

Along a similar vein, this court determined in *Woods II* that Woods waived and abandoned the claim that his counsel was ineffective for failing to investigate the ever-changing story of his girlfriend Rawshanda Solomon. 2012 WL 6734507, at *5. Generally speaking, a defendant cannot revive an abandoned point in a subsequent proceeding. See *Johnston v. State*, No. 109,307, 2014 WL 642172, at *3 (Kan. App. 2014) (unpublished opinion) (reiterating that a motion to correct illegal sentence cannot be used to revive abandoned issues), *rev. denied* 301 Kan. 1046 (2015); *State v. Warren*, No. 94,505, 2007 WL 959614, at *5 (Kan. App.) (unpublished opinion) (holding that appellant cannot revive claim he abandoned before the district court), *rev. denied* 284 Kan. 951 (2007).

Therefore, Woods cannot pursue these issues for what amounts to a third time.

*A valid guilty plea is not subject to collateral attack on the ground of actual innocence.*

We are left with Woods' claim of actual innocence. But what makes this case different from most K.S.A. 60-1507 cases is that we are faced with a guilty plea—and, more pressingly, one that has already withstood a challenge by way of a motion to withdraw a plea and a challenge under K.S.A. 60-1507 for ineffective assistance of counsel. Accordingly, we must accept as both a matter of fact and a matter of law that Woods' plea was freely and voluntary entered upon the advice of competent and effective counsel. We have already so held after two full evidentiary hearings.

Furthermore, we cannot ignore the statutory and legal proposition that "[a] plea of guilty is admission of the truth of the charge and every material fact alleged therein." K.S.A. 22-3209(1); *Hughes v. State*, 206 Kan. 515, 517, 479 P.2d 850 (1971) ("A voluntary plea of guilty is a confession of guilt of the crime and every fact alleged therein."). By entering a plea of guilty, Woods was well aware of the facts of the case. In fact, he knew the extent of his involvement in the events of the evening better than

11

anyone else. Based on the preliminary hearing, the pretrial motions filed with the court, and the documents exchanged by the parties, Woods knew that at least on the planned day of trial, October 13, 2003, that some witnesses were going to testify on his behalf and some were not. He freely and voluntarily chose not to take his chances with a trial. The fact that at some point on or after October 13, some—though not all—witnesses appear to have recanted previous incriminating statements or returned to original statements does not change the fact that Woods decided not to risk the consequences of facing a trial on two counts of first-degree murder and one count of aggravated battery.

Moreover, our caselaw in Kansas is clear and longstanding. Where judgment and sentence have been entered upon a plea of guilty, there can be no review of the sufficiency of the evidence in a K.S.A. 60-1507 proceeding. *Hughes*, 206 Kan. at 517; see also *Bousley v. United States*, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (holding that a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked); *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (same); *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984) (same), *overruled in part on other grounds by Puckett v. United States*, 556 U.S. 129, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009); *United States v. Grigsby*, 633 Fed. Appx. 696, 697 (10th Cir.) (unpublished opinion) (noting that to the extent the defendant asserted evidence would prove he did not commit the charged crime, his knowing guilty plea foreclosed any collateral attack on the conviction), *cert. denied* 136 S. Ct. 2031 (2016); *Crow v. United States*, 397 F.2d 284, 285 (10th Cir. 1968) (holding that plea of guilty admits all facts well pleaded and sentence imposed and is not subject to collateral attack on ground that, as factual matter, accused was not guilty of the offense charged); *Clark v. State*, 92 Idaho 827, 833, 452 P.2d 54 (1969) (citing cases from numerous state and federal jurisdictions holding that conviction on a valid plea of guilty not subject to collateral attack on ground that as a factual matter the accused not guilty of offense charged).

Woods' overarching claim on appeal is that his allegations in the current K.S.A. 60-1507, if true, establish his actual innocence. A claim of actual innocence, he argues, provides the gateway to overcome the procedural bars of timeliness and successiveness by establishing the manifest injustice and exceptional circumstances required to pursue his claim and receive an evidentiary hearing. Clearly a colorable claim of innocence can be the basis to find manifest injustice. See *Vontress*, 299 Kan. at 616. That said, we do not need to reach Woods' assertion that a colorable claim of innocence may also be the basis for a finding of exceptional circumstances, because even if we did find that a colorable claim of innocence opens both gateways, it is still insufficient to override the longstanding rule that a freely and voluntarily entered guilty plea bars a collateral attack on the sufficiency of the evidence. Accordingly, we find that the district court did not err in summarily denying Woods' untimely and successive K.S.A. 60-1507 motion.

*Woods was not entitled to appointed counsel.*

As a final note, Woods argues in his brief that the district court needed to appoint him counsel. However, the district court is only required to provide counsel when the motion raises the sort of a substantial question of law or fact that requires a preliminary hearing. See Supreme Court Rule 183(i) (2015 Kan. Ct. R. Annot. 271); *Lujan v. State*, 270 Kan. 163, 170-71, 14 P.3d 424 (2000) (holding that the district court may summarily dismiss the motion or "determine that a potentially substantial issue or issues of fact are raised in the motion . . . and hold a preliminary hearing after appointment of counsel"). Given that the motion, files, and records demonstrate that summary disposition was proper in this case, Woods was not entitled to appointment of counsel.

Affirmed.

13